**Elza M. MENEAR, Trustee in Bankruptcy of Colonial Candy Corporation, a Corporation, Bankrupt, Plaintiff,**

v.

**MORGANTOWN COMMUNITY ASSOCIATION, Inc., a West Virginia Corporation, Defendant.**

No. 439–F.

United States District Court
N. D. West Virginia, Fairmont Division
Dec. 1, 1955.

Charles McCamic, Wheeling, W. Va., and Glenn Hunter, Morgantown, W. Va., for plaintiff.

George Farmer, Morgantown, W. Va., for defendant.

WATKINS, Chief Judge.

This action has been brought by the Trustee in Bankruptcy of Colonial Candy Corporation, to set aside a deed made by George R. Farmer, a Special Commissioner of the Circuit Court of Monongalia County, West Virginia to the defendant, Morgantown Community Association, on February 10, 1954, 48 days prior to the filing of the petition in bankruptcy. The deed was executed and delivered, and the sale confirmed pursuant to decree of the state court in a judgment lien creditors' suit against Colonial Candy Corporation. The plaintiff claims that this state court deed must be set aside under Section 67, sub. d(2) (a) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2) (a), because it was made within one year prior to filing the petition in bankruptcy, without a fair consideration by a debtor who was then insolvent, and that such deed is fraudulent as a matter of law, without regard to the intent of the parties, and notwithstanding the fact that the sale had been made and confirmed by prior decree of the state court. The defendant says that Sec. 67, sub. d(2) (a) is not applicable to the facts in this case because here the real transfer or obligation was made and incurred more than one year prior to filing the petition in bankruptcy. The defendant says that the decree entered in the state court did not create the obligation relied upon by defendant to secure the decree of sale in the state court, but that the state court merely recognized and established a transfer or obligation which was made and incurred in 1948 more than one year prior to the filing of the petition in bankruptcy on March 30, 1954.

In 1947 the Carnegie-Illinois Steel Company closed its plant at Morgantown, W. Va. Being desirous of helping the community where it had operated for more than a third of a century, and desirous of furnishing employment to its former employees, it conducted negotiations with the Morgantown Chamber of Commerce with a view of giving its plant site to the community for industrial use. Carnegie-Illinois agreed to convey title to its property consisting of more than 20 acres upon certain conditions. One condition was that a non-profit community corporation be chartered to take title to such real estate. Another condition was that the property must be used exclusively for industrial purposes, and that the grantee would see that the property would never fall into the hands of anyone who would attempt to use any part of it for other than industrial purposes; and that it would be used to furnish employment for former employees. The site was peculiarly adapted to industrial use, being the only available industrial site in the urban area. The steel company had opportunity to sell to others but felt an obligation to its employees and the community. The defendant, Morgantown Community Association, a non-profit corporation, was organized and chartered to take title to the property and to carry out the conditions of transfer, after which a deed was executed and delivered. Both parties agreed that these conditions would not be put into the deed but that they would be carried out by the grantee. Soon thereafter Community entered into negotiations with Colonial Candy Company whereby Community agreed to lease a part of the real estate (Parcel (a)) to Colonial and Colonial promised to erect a manufacturing plant having a value of not less than $20,000. The lease was for five years at a monthly rental of $360 per month, or $4,320 annually, which would amortize the $20,000 loan, with interest at 3.2 per cent, in five years. If the building when completed was found to be worth $20,000, Colonial was to convey the building to Community in return for the loan of $20,000 which was to be repaid in five years in the form of rent. At the end of five years title to land and building was to be conveyed to Colonial. If the land

and building were not used by Colonial for candy manufacturing and Colonial ceased to engage in that business, Community had the right to repurchase the same for depreciated value of the building or $25,000, whichever was the lesser sum. Community explained to Colonial on more than one occasion the reason for such repurchase agreement, and why it must see that the property be used for industrial purposes only. If Colonial failed to meet the monthly payments of rental, it agreed to surrender peaceful possession of the real estate and the agreement to convey the same would be cancelled. Such a lease agreement was signed June 1, 1948 and recorded June 4, 1948. No specifications or plans for the building were agreed upon and the type of building was left to Colonial. Community had no control over the type of building or the amount of money expended thereon.

Colonial built the building but paid only one month's rent. Much time elapsed, and then, at Colonial's request, Community conveyed to Colonial by deed dated September 15, 1949, recorded September 27, 1949, the land and building, retaining a vendor's lien for the balance due. The sum of $5,000 was agreed upon as a fair price for the land. Community had opportunities to sell the property to others without the repurchase condition, but did not do so because of its understanding with Carnegie-Illinois. Up to this time title to the property had remained in Community, but Colonial said it needed title to the property in order to issue more stock. In addition to the vendor's lien a deed of trust was executed by Colonial to secure the balance due to Community. The deed contained the same condition or reservation of right of repurchase which was contained in the lease. The deed of trust which was recorded with the deed mentioned the condition or reservation of repurchase and referred to the deed for a more particular description of such condition or reservation. From time to time thereafter as Colonial encountered more financial trouble it discussed the possibility of re-

financing through the R.F.C. and asked Community to surrender its reservation for repurchase, which request was denied.

In December, 1951, Rockwood, a lien creditor, brought a judgment lien creditors' suit against Colonial in the Circuit Court of Monongalia County, W. Va., the primary purpose of which was to subject the assets of Colonial to the payment of its debts. The bill and amended bill specifically alleged the deed of conveyance from Community to Colonial dated September 15, 1949, and charged that the condition or reservation of repurchase contained therein was void, and asked "that the Court construe the optional provision contained in the deed" and for general relief. In its answer Community denied that the condition or reservation of repurchase was void and alleged that it had exercised its option to repurchase the property after it had learned that such property was no longer being used by Colonial for its candy manufacturing business and had served a notice of such election upon Colonial, but that Colonial was unable to convey the property because of such creditors' suit; further alleged that it was willing to comply with the terms of the option and to pay the purchase money by paying the difference between the repurchase price of $25,000 and the balance then owing by Colonial upon the original purchase price which was then secured by first lien on the property; further asserted the execution of the original lease and deed thereafter at the request of Colonial; asserted that neither the plaintiff nor any other creditor of Colonial had been injured thereby; and prayed that a decree be entered conveying the property to it. The defendant Colonial was served with process and appeared in the suit by its counsel.

The case was referred to a commissioner who gave notice to creditors, heard proof of claims, and took much testimony with reference to the validity of the option to repurchase. He reported to the court that the option was void because (1) it was not authorized by the

board of directors of Colonial, (2) not supported by consideration and not under seal, and (3) it results in unjust enrichment of Community at expense of Colonial. Plaintiff and many other creditors excepted to the rulings of the commissioner holding the option valid in certain other respects, and Community excepted to the rulings holding the option void for the reason stated above.

By decree entered July 30, 1953, the state court overruled the exceptions of plaintiff and other creditors and sustained the exceptions of Community and held the option valid. The decree also ordered the real estate in controversy to be conveyed to Community for the purchase price of $25,000 but deducting therefrom the unpaid purchase money owing and secured by first lien on the property and taxes owing and unpaid, and directed the residue of the purchase money to be paid into court and appointed George R. Farmer Special Commissioner to make the conveyance.

On motion of the plaintiff and many of the defendants such final decree was suspended for a period of ninety days to enable the parties to apply to the Supreme Court of Appeals of West Virginia for an appeal and supersedeas to that part of the decree that upholds such option and directs its enforcement. Thereafter such parties made three several applications for appeal, all of which were refused. More than eight months having elapsed since the entry of such decree, the same is no longer appealable.

On March 30, 1954, some of the creditors who were unsuccessful in the state court proceeding to have the option to repurchase declared void, filed an involuntary petition in bankruptcy against Colonial, and after a trustee in bankruptcy was appointed, these same creditors filed a petition with the Referee in Bankruptcy asking permission of the Referee to bring this action in this court to have the deed to Community set aside because it was made without fair consideration and within one year prior to filing the petition in bankruptcy. Such authorization was granted. The plaintiff in this action who is the Trustee in Bankruptcy is represented by the same attorney who brought the creditors' suit in the state court, who applied for the appeal in the West Virginia Supreme Court of Appeals and who filed the petition before the referee for authority to bring this suit. In this action the plaintiff alleges the same grounds which were alleged in the state court. In both actions plaintiff claimed that the repurchase agreement was void and should be set aside because not authorized by the board of directors; that it was without fair consideration; and that it resulted in unjust enrichment to Community at the expense of Colonial. The creditors who filed the petition in bankruptcy filed their claims in the state court action, and such claims were adjudicated by the final decree of the state court. They were all parties to the state court action by voluntarily appearing and proving their claims, and all of them filed exceptions to the report of the commissioner in chancery. In the state court action the common creditors filed their claims and they were adjudicated, the personal property of Colonial was sold and the surplus of the money from the sale of all property after payment of liens is now being held by the state court to be turned over to the Trustee in Bankruptcy to apply on common claims.

After the time for appeal expired George R. Farmer, Special Commissioner, conveyed the property to Community on February 10, 1954. His actions were reported to the court on February 11, 1954, the sale was confirmed by the court, and on the same day he delivered the deed to Community as directed by the court, which deed was recorded on February 12, 1954, prior to the filing of the petition in bankruptcy on March 30, 1954.

Section 67, sub. d(2) of the Bankruptcy Act provides:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors exist-

ing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; * * *."

Section 67, sub. d(5) provides that for the purpose of subdivision d "a transfer shall be deemed to have been made at the time when it became so far perfected that no bona fide purchaser from the debtor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein * * *."

When Colonial accepted the deed made in conformity to the original lease agreement it "incurred" an obligation to reconvey the property upon the happening of a future event. Had this obligation or transfer occurred within one year prior to the filing of a petition against Colonial, and had this obligation so incurred been for less than fair consideration by a debtor who was or who would be thereby rendered insolvent, it would have been fraudulent as to creditors existing at the time of such transfer and obligation, and could be set aside. The obligation was complete and amounted to a condition attached to the title of the real estate when the deed was recorded in 1949. Thereafter no bona fide purchaser from the debtor or its successor in title could take the property free of the retained right of repurchase. Therefore the obligation or transfer was incurred or made in 1949, more than one year prior to the filing of the petition in bankruptcy, and is thus excluded from the operation of Sec. 67, sub. d(2) (a).

Plaintiff bases his case upon the erroneous assumption that the obligation or transfer contemplated by Section 67 in this case, was incurred or made in 1954 when the Special Commissioner made his deed to Community under the state court decree. At no time after entering into the contract and accepting the deed did Colonial have any property right in the real estate free from the reserved right of repurchase. The trustee is not vested with any better

title or right to the bankrupt's property than belongs to the bankrupt or his creditors at the time the petition in bankruptcy was filed. The ministerial act of conveyance by the Special Commissioner in 1954 did not create the transfer or the obligation to transfer, but the court in directing the execution of the deed merely recognized the obligation to convey as having arisen out of transactions occurring in 1948 and 1949. The case of Mulhern v. Albin, 8 Cir., 163 F.2d 41, 43, is directly in point. In that case an uncle brought a suit against his niece in the state court, claiming that he had an equitable lien for purchase money paid by him on land owned by the niece. After trial a decree was entered awarding him a judgment in rem against the land and execution through sale to satisfy the judgment. Within less than four months from the entry of the decree the niece was in bankruptcy and it was claimed that the uncle's lien on the land was void under Sec. 67 of the Bankruptcy Act, as amended, because less than four months intervened between the rendition of the decree in the state court and the date of bankruptcy. The court said:

"* * * The decree which was entered in the state court suit between the uncle and the niece did not create the equitable lien of the uncle but recognized and established it as existing in equity by reason of the transactions through which the niece became vested with the legal title subject to the uncle's equitable lien and the decree provided execution to enforce the rights of the parties as it found them to exist in equity. * * * The rights of the parties in respect to the lands in question were determined by the circumstances of the transactions occurring between the parties in 1942, some three years before the decree date. The niece never acquired a title superior to the equitable lien of the uncle. * * *

"In our opinion the conclusion to be drawn from this language (section 67, sub. f) is that it is the lien

created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated, and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months the property is discharged therefrom, but not otherwise a judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens. If this were not so the date of the acquisition of a lien by attachment or creditor's bill would be entirely immaterial."

In Pearson v. Rapstine, 5 Cir., 203 F. 2d 313, 315, a chattel mortgage was given on personalty of a bakery business and duly recorded in October, 1949. An insurance policy was taken out with a loss payable clause to the mortgagee. A fire occurred in 1950 and in February, 1951 the mortgagee brought suit in the state court against the mortgagor to foreclose the mortgage lien, and in May, 1951 the state court granted the relief sought and ordered the insurer to pay mortgagee. The judgment was docketed in June, 1951, and on the same date mortgagor filed a voluntary petition in bankruptcy. The trustee who was thereafter appointed, claimed that the state court judgment was a "void and fraudulent" preference as against other creditors, and asked that it be set aside under Sec. 67 of the Bankruptcy Act. The court held:

"The lien held by the mortgagee did not originate with the state court decree entered on June 1, 1951. That decree simply enforced a pre-existing lien dating from October 1, 1949 when the mortgage was executed, and a contract right dating from March 19, 1950, when the insurance policy was issued. The lien enforced by the state court was therefore not one 'obtained' within four months of bankruptcy, as contemplated by sec. 67, sub. a of the Bankruptcy Act."

Although the trustee was not a party to the state court proceeding in Pearson v. Rapstine, the court held that where judgment of the state court in favor of a mortgagee in action against a mortgagor and insurer to recover proceeds of fire policy became final and no appeal was taken, judgment was res judicata in bankruptcy proceeding of mortgagor wherein trustee in bankruptcy sought proceeds of policy. To the same effect see In re Estes, D.C.N.D.Tex., 105 F. Supp. 761.

In Rader v. Star Mill & Elevator Co., 8 Cir., 258 F. 599, the court held that a vendor's lien on property of a bankrupt, although established in a state court proceeding by a decree rendered within four months prior to bankruptcy, is not one obtained through legal proceedings, and consequently was not defeated by Sec. 67 of the Bankruptcy Act. In the same case the court held that a decree against a corporation, which was subsequently adjudicated a bankrupt, establishing and foreclosing a vendor's lien on real estate, estops the bankrupt, its trustee, and general creditors from asserting or maintaining, not only every matter offered, but also every admissible matter that might have been offered, in the foreclosure suit to defeat the plaintiff's claim.

In Union Joint Stock Land Bank of Detroit, Mich. v. Byers, 3 Cir., 100 F.2d 82, it was held that the fact that judgment recovered on widow's dower charge against land, which had been conveyed to bankrupt subject to dower interest, was obtained within four months of bankruptcy, could not affect judgment's validity, since judgment did not establish a new lien but merely adjudicated an existing one.

In 6 Am.Jur. 1124, it is said:

"The trustee has no greater right to attack a foreclosure sale which was completed prior to bankruptcy than the bankrupt himself would have had in the absence of bank-

ruptcy, except as the proceedings may have been a cloak for a transaction voidable under the Bankruptcy Act. The prevailing view is that jurisdiction over mortgaged premises having been acquired by the institution of foreclosure proceedings in state court, the subsequent bankruptcy of the mortgagor does not divest the state court of its jurisdiction. Thus, where the mortgagor is, during the foreclosure, declared a bankrupt, his trustee in bankruptcy takes the title, subject to such foreclosure proceedings, and his rights are foreclosed by the subsequent decree of sale. * * * "

For the reasons stated above, the Trustee in Bankruptcy is bound by the decree of the state court. Plaintiff does not charge that the decree of the state court was obtained by fraud, the sole charge being that the "transfer" ordered therein was fraudulent because not based on a fair consideration. On this matter the state court has fixed the rights of the bankrupt in the property. The state court had taken jurisdiction of the res involved in a suit to enforce liens thereon and to determine the rights of Community therein in December, 1951 and had fully and finally adjudicated all matters pertaining to the rights of the parties in this property in July, 1953, and nothing thereafter remained to be done but the ministerial act of carrying out the terms of the decree. If this court would set aside the conveyance by the Special Commissioner, the trustee could not sell the property free of the right of Community to acquire the same upon payment of the $25,000 purchase price and free of the right of Community to credit against that price the first lien indebtedness owing by Colonial.

If Sec. 67, sub. d(2) (a) were otherwise applicable here, there is no allegation in the complaint and no evidence in the record to show that any now unsatisfied claims were in existence at the time the obligation was incurred in 1949. Sec. 67 specifically provides that such obligation or transfer is fraudulent only as to creditors whose claims existed at the time the transfer was made or the obligation incurred.

While the state court has already decided the fairness of the original transaction between Community and Colonial and the fairness of the conveyance by the Special Commissioner to Community, there is nothing in this record to show that either transaction was without fair consideration. On the contrary the evidence shows the fairness of both, and this court would so hold if it had jurisdiction to determine the question of fair consideration.

The evidence shows that while some $92,000 was spent in constructing the building, that when the building was completed, it was in very poor condition. It was poorly constructed and not adaptable for use. It had no heating system, no sprinkler sytem, insufficient ventilation, insufficient plumbing and lighting and the roof was not even waterproof. One witness testified that when the building was completed Community would have been better off to have its lot and $20,000 back than to have the lot with the building thereon. No evidence was offered by the plaintiff as to the value of the property at the time of the deed to Colonial in 1949, or as to its value on the day the commissioner made his deed. When the property was deeded to Community in 1954 by the Special Commissioner, the building was in even worse condition and it was necessary for Community to spend the sum of $26,037.-76 thereon to make it tenantable for rental purposes. This money was spent prior to bankruptcy and in good faith, at a time when no suit was pending attacking its title. The total cost of the building and land to Community is the sum of $51,037.76 and it is now being rented for an annual rental of $7,361.16, under a lease whereby Community must pay the taxes and the lessee is given option for many more years without any increase in the rent. The evidence shows that the lien debts, with interest to March 1, 1953 were $93,110.01, and the total of common debts was $15,737.21. With the addition

of more interest on the lien debts, it is clear that there is no possible equity in the property for common creditors. Seizure and sale of this property by the trustee would only result in additional trustee commissions and counsel fees without any benefit to creditors.

Throughout its brief counsel for the plaintiff have proceeded upon the theory that the original condition or reservation of repurchase is not a provable debt in bankruptcy; that it was merged with the deed of trust, and was thereby extinguished, and was of no consequence or effect. These contentions are wholly without merit. I have examined the many cases cited in plaintiff's brief and find that all of them can be distinguished from the facts of this case.

For the reasons stated the relief asked in the complaint is denied and the action is dismissed at the cost of the plaintiff.