BUTLER, ET UX. *v.* DAUM, ET AL.

[No. 94, September Term, 1966.]

448

*Decided February 13, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Nelson Deckelbaum,* with whom was *Robert H. Law* on the brief, for appellants.

*Henry A. Babcock,* with whom was *E. Austin Carlin* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

In this proceeding involving the foreclosure of a mortgage deed of trust for failure to pay the balance due on a promissory note secured thereby, the questions on appeal relate to (i) the manner of giving notice of foreclosure, (ii) the inadequacy of the purchase price, (iii) the amount of indebtedness in default, and (iv) the right to redeem the mortgaged property.

The property in question is a one and one-half acre tract of land improved by a modest dwelling located off Odell Road in Prince George's County formerly owned by Cal H. Crosson

and Lizzie Crosson, his wife. When, on August 7, 1962, the Crossons gave a promissory note to Cy Friedman for $1250, they executed a mortgage deed of trust to Fred Daum and J. V. Yznaga as trustees for the noteholder. Subsequently, the Crossons entered into a contract for the sale of the property to Daniel Butler and Helen Butler, his wife. Eventually, the Butlers took title to the property subject to the outstanding indebtedness due the noteholder and payments were made thereon to the Security Bank, Washington, D. C., where the note had been placed for collection. From September of 1962 up to and including August of 1964, the Butlers paid $1219.75 on account of the promissory note for $1250. But the record indicates that on November 3, 1962, an unexplained charge of $707.62 had been entered on the face of the note for $1250 as to which there is no explanation. And when the foreclosure proceeding was docketed, the balance due on the note was stated to be $861.14 as of August 5, 1964.

The foreclosure was duly advertised and the sale of the property was held on June 22, 1965, in front of the premises. J. Victor Dickey, the highest bidder, purchased the property for $2400. The sale was reported on July 13, 1965, and an order nisi was entered on the same day. The Butlers, alleging that the affidavit of indebtedness was incorrect in that all principal payments had been made or were more than current, claimed that the trustees were not empowered to sell the property and that the sale was therefore null and void. Subsequently, the exceptions were amended to include other allegations to the effect that the advertisement was defective and that the purchase price was inadequate. At the hearing, the chancellor, having found that there was no proof of any fraud or irregularity or any adequate proof as to the inadequacy of the purchase price, ratified the sale on December 30, 1965. This appeal was taken by the Butlers, but not having filed an appeal bond, the trustees conveyed the property to the purchaser on February 25, 1966. Rather than grant the motion of the appellees to dismiss the appeal on the premise that the case became moot upon the failure of the appellants to give a bond staying the proceedings, we shall consider the questions presented by the appeal.

(i)

The claim of the appellants that they were not properly notified of the foreclosure sale is based on the assumption that they were entitled to personal notice. Aside from the fact that the Butlers had actual notice, by way of a letter (the receipt of which is indicated by the record) from the attorney for the noteholder in which they were advised that unless the balance due or $861.14 as of August 5, 1964 was paid in full within a week a foreclosure action would be initiated, the law is clear that personal notice of a mortgage foreclosure proceeding is not necessary. See *Blanch v. Collison,* 174 Md. 427, 199 Atl. 466 (1938). The only notice which is required is that set forth in Maryland Rule W74 a 2 providing that the person authorized to make a sale of real estate "shall give notice of the time, place and terms thereof by advertisement in some newspaper published in the county where the mortgaged property * * * is located * * * at least once in each week for three successive weeks, the first such publication to be not less than fifteen days prior to sale and the last such publication to be not more than one week prior to sale." In addition to the "time, place and terms" of sale, the cases state that the rules generally controlling the adequacy of an advertisement of a judicial sale are (1) that the advertisement is sufficient if it describes the property so that it can be located by the exercise of ordinary intelligence and so that more detailed information concerning it can be obtained if desired, *Brooks v. Bast,* 242 Md. 350, 219 A. 2d 84 (1966), *Ruby v. Bowlus,* 217 Md. 115, 140 A. 2d 513 (1958), cert. den. 358 U. S. 856 (1958), *deTamble v. Adkins,* 210 Md. 414, 124 A. 2d 276 (1956), *Preske v. Carroll,* 178 Md. 543, 16 A. 2d 291 (1940); and (2) the failure to mention or fully describe the nature and extent of the improvements will not vitiate a sale unless the exceptant meets the burden of overcoming the presumption of the validity of the sale by showing that the omission was prejudicial to the sale of the property at a fair and adequate sum and that a resale would be likely to produce a greater amount, *Brooks v. Bast, supra, Hardy v. Gibson,* 213 Md. 493, 133 A. 2d 401 (1957), *Sawyer v. Novak,* 206 Md. 80, 110 A. 2d 517 (1955), *Preske v. Carroll, supra.* Since the record in this case indicates that the notice of sale was prop-

erly advertised in a proper newspaper and that the description of the property was adequate, the appellants had constructive notice of the sale. Clearly the claim that they were not suffi-ciently notified is invalid.

(ii)

The claim of the appellants that the purchase price was in-adequate is not supported by the record. While their appraiser valued the property at $7950, he did not explain how he ar-rived at the valuation other than to state that adjoining prop-erties had sold for $670 per acre and that the property could be subdivided into four or five lots, but he admitted that a division into smaller lots would require a right-of-way to the public road of at least fifty feet which the property did not have. As against this there was other evidence that the land and the house were assessed for $2050; that the property is two hun-dred feet from the public road and the only access to it is across the land of others; that the right-of-way (if one exists) is prob-ably only five feet wide; that the one-room upstairs and the two-room downstairs house is supported in the back by wooden piers and has only a partial cellar with a dirt floor; and that the house is not connected with water and, other than a two-hole outside privy, there are no sewerage facilities. The cases concerning inadequacy of price are multitudinous, but a quota-tion from one—*Suburban Garden Farm Homes Corp. v. Duck-ett,* 179 Md. 648, 655, 22 A. 2d 467 (1941)—will suffice to state the law on this point:

> "The law is well settled that to justify a court of equity in setting aside an adequately advertised sale of prop-erty upon this ground [inadequacy of price] facts must be shown from which the conclusion arises that the price is so insignificant as to shock the conscience of the Court. The facts must be such as to compel the conclusion that because of the inadequacy of the price, constructive fraud is implied."

The burden of proving inadequacy was on the exceptants and they did not do so. As a consequence, the chancellor found absolutely no evidence of fraud or irregularity and stated that if the price was inadequate, the evidence thereof was not such as to shock his conscience. His findings will not be disturbed.

(iii)

The claim as to the amount of indebtedness in default presents an anomalous situation. Although the appellants disclaim the unexplained charge of $707.62, they do not claim that the mortgage was not in default. Rather they claim that the arrearage was not as much as the trustees claimed. The invalidity of a mortgage sale, like other judicial sales, is not presumed, and the burden of proving the contrary is on the one attacking the sale. *Webster v. Archer,* 176 Md. 245, 4 A. 2d 434 (1939) ; *Sawyer v. Novak, supra.* Since the record is clear that the appellants made no effort to pay that part of the mortgage indebtedness they did not disclaim, the question as to whether or not they owe the added amount of $707.62 is a matter which should be resolved by the auditor when the audit is stated. In *Manhattan Land Corp. v. New Baltimore Loan and Savings Asso.,* 138 Md. 529, 114 Atl. 469 (1921), where there was a comparable situation in that there was a default in the covenants and conditions of the mortgage, it was held that a right to foreclose existed even though the mortgagee had not paid over the entire amount of the loan secured by the mortgage.

(iv)

The final claim of the appellants that they had a right to redeem the property at any time prior to the ratification of the sale is also without merit inasmuch as the right of redemption was divested by the valid foreclosure sale. Although the jurisdiction of equity does not become complete until the filing of the report of sale, nevertheless the sale in effect foreclosed the mortgage and divested the mortgagors of all right of redemption, *Union Trust Co. v. Biggs,* 153 Md. 50, 137 Atl. 509 (1927) and *Berry v. Skinner,* 30 Md. 567 (1869), and unless satisfactory proof is shown before final ratification that the sale should be set aside, which was not done in this case, all rights of the mortgagors in the land are deemed to have ceased to exist as of the date of the sale.

For the reasons assigned the final order of ratification filed December 30, 1965, will be affirmed.

*Order affirmed; the appellants to pay the costs.*