WARING *v.* GUY, ET AL.

[No. 52, September Term, 1967.]

*Decided February 6, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*William M. Loker, Jr.,* for appellant.

*Walter B. Dorsey* for appellees.

MARBURY, J., delivered the opinion of the Court.

After hearing testimony and receiving exhibits of the parties, Judge Dorsey, as chancellor in the Circuit Court for St. Mary's County, Maryland, issued a decree sustaining the exceptions of the appellees here and setting aside the sale of certain real estate sold at foreclosure under the powers of sale contained in two certain mortgages. The mortgage debts here involved arose from two separate instruments running from the appellees, J. Mattingly Guy and Alice C. Guy, his wife, mortgagors, in favor of Metropolis Building Association of Baltimore City, as mortgagees. These conveyances, the first dated September 28, 1962, and recorded in liber CBG 76, folio 104, and the second dated April 21, 1964, and recorded in liber CBG 85, folio 29, were given to secure debts of $14,950 and $1560, respectively, for a total indebtedness of $16,510. At the time of the foreclosure sale, after all payments, fees, fines and credits were taken into account, there remained $13,768.22 as the gross amount of mortgage indebtedness due.

Notice of sale was published in accordance with the provisions of Maryland Rule W74 a 2 (i) and subsequently the property was sold at public auction at the courthouse door in Leonardtown, Maryland, on Saturday, October 1, 1966, at 11:00 a.m. The sale attracted three bidders and the property, consisting of a farm containing twenty-two and a half acres and improvements thereon, was sold to the highest of these for the sum of $14,800. The appellees duly filed exceptions seeking to have the sale set aside, alleging inadequacy of the purchase price and that they had money in hand to pay the mortgage indebtedness and costs incident to said sale as grounds for their exceptions. A hearing on these exceptions was scheduled for January 24, 1966, and on January 23, 1966, a petition was filed by the appellant, the purchaser at the foreclosure sale, seeking leave to intervene as a party in interest in the proceedings. This petition was granted. On the morning of the hearing, supplementary exceptions were offered and accepted by the court over the objection by the attorney for the mortgagee and by the appellant. The supplementary exceptions alleged that the advertisement of the property failed to properly describe the land and improvements, and "other good and sufficient reasons to be assigned at this hearing."

At the hearing the following witnesses were heard: Oliver R. Guyther, appellees' expert, who testified as to his appraisal of the property; the appellees J. Mattingly Guy and Alice C. Guy, the mortgagors; John H. T. Briscoe and Philander B. Briscoe, attorneys for the mortgagee; and a Mr. Brenden, a real estate appraiser, called by the Association, who testified as to his opinion of the value of the property. From Judge Dorsey's subsequent decree in favor of the appellees this appeal followed.

In his oral opinion Judge Dorsey recognized that inadequacy of purchase price alone was not a sufficient ground for setting aside the foreclosure sale unless the amount thereof was so inadequate as to shock the conscience of the court. See *Butler v. Daum,* 245 Md. 447, 226 A. 2d 261. He ruled, however, that the inadequacy of price along with a mistake by one of the mortgagors was sufficient to justify sustaining the appellees' exceptions. The mistake on which he relied was allegedly brought about by a telephone conversation between the appellee Mrs. Guy, and John H. T. Briscoe, attorney for the mortgagee. The exact substance of the conversation is not clear from the record and the testimony of Mrs. Guy and Mr. Briscoe was at variance, she claiming that Mr. Briscoe stated that the sale would not take place for the reason that Mrs. Vallandingham, a sister of Mr. Guy, was going to take care of the indebtedness, while Mr. Briscoe stated unequivocally that he did not tell Mrs. Guy that the sale would not be held. Although the chancellor found that there was a mistake on the part of Mrs. Guy he stated specifically that he did not question Mr. Briscoe's veracity. Nor has the appellee made a claim of bad faith, fraud, or misrepresentation on the part of Mr. Briscoe or anyone connected with the sale. Therefore, the mistake, if it existed at all, must have been solely on the part of Mrs. Guy from her misunderstanding of the conversation. At any rate, even if we accept Mrs. Guy's version at face value, it is manifest that she did nothing to ascertain that Mrs. Vallandingham actually intended to put up the money to stop the foreclosure proceedings. There was no reason presented to us and we know of none why a properly advertised and conducted foreclosure sale should be set aside because of mistaken belief on the part of a default-

ing mortgagor that the sale would not be held, when that belief was not the result of any fraud, misrepresentation, or any other misconduct by any other party, especially when the defaulting mortgagor could have, by slight effort and in the exercise of reasonable prudence, ascertained that her belief that the sale would not be held was mistaken. Furthermore, as admitted by the appellees in their brief, there was no positive testimony that Mrs. Guy herself intended to appear at the sale to bid on the property.

Although the appellees claimed that the property was improperly described in the advertisement, they agreed that

"the advertisement is sufficient if it describes the property so that it can be located by the exercise of ordinary intelligence and so that more detailed information concerning it could be obtained, if desired, * * *

and "that failure to mention or fully describe the nature and extent of improvements * * * will not vitiate a sale unless the exceptant meets his burden of overcoming the presumption of the validity of a judicial sale by showing that the omission was prejudicial to the sale of the property at a fair and adequate sum, and that a resale would be likely to produce a greater amount." *Brooks v. Bast,* 242 Md. 350, 357, 219 A. 2d 84.

The appellees claimed the advertisement to be faulty for not describing the property as waterfront, a classification which would have made the land more valuable, but the appellees' own expert, who appraised the property, stated that he would not advertise it as waterfront.

Their other claims as to defects in the advertisement related to the sale in gross instead of in three separate parcels. Their contention was based on the fact that the land was acquired in three separate parcels by the mortgagors. However, there was no showing that the parcels were of a different nature and it was conceded that the entire acreage had been used for some time as a tobacco farm and was so assessed by the county tax assessor's office. Also the mortgages were on the entire twenty-two and a half acres as a single tract and it was only in the de-

scription of the land that three parcels were mentioned. The record shows no prejudice to the appellees by reason of the mode of advertisement.

Having found that no irregularity existed as to the advertisement of or the conduct of the foreclosure sale there remains only the finding of the chancellor that the purchase price was inadequate, which, standing alone is insufficient to set aside a foreclosure sale; unless, of course, the price is so inadequate as to shock the conscience of the Court. *Butler v. Daum, supra; Ruby v. Bowlus,* 217 Md. 115, 140 A. 2d 513; *deTamble v. Adkins,* 210 Md. 414, 124 A. 2d 276; *Ten Hills Co. v. Ten Hills Corp.,* 176 Md. 444, 5 A. 2d 830. On the matter of what constituted an inadequate price, the appellees admitted in their brief to not having been able to find a case in which a sale was set aside because of inadequacy of price alone. As stated in *Lewis v. Beale,* 162 Md. 18, 158 Atl. 354:

> "The purchase price may not be the market value of the property, but a fair sale at public auction is one of the best evidences of actual value. It was the method specified in the deed of trust, and thereby entered into the contractual relation of the mortgagors and mortgagee. The agreed remedy was a condition upon which the loan was obtained, and was a part of the mortgage security, and the mortgagors necessarily contemplated that a sale involved the probability that the price received for the property would not be its full market value, because the purchase price at public auction would be obtained by a compulsory or forced sale, which would not fulfill the prerequisites for the determination of a fair market value, which assumes an agreement on the price of the land resulting from a treaty between an owner willing, and not obliged, to sell, for cash, and a buyer desirous, but not compelled, to purchase. * * *
>
> "The fact that the court must consider the question at bar with reference to the circumstance that the standard is that of a forced sale, fairly made, rather than that of a voluntary sale by the owner, is due to the de-

fault of the debtor, who must assume the agreed consequences of the default. If the sale take place during a period of financial depression, or of depreciation in the value of land, or of other adverse general conditions for which neither party is responsible, and hardship thereby result, it is a consequence which must be borne as an incident of the contract, and the court cannot relieve one party to the contract without violating the contractual right of the other."

The chancellor below in his oral opinion laid great stress upon the fact that the appellees had deposited a check in the amount of $16,490 with the court to cover the mortgage indebtedness and the costs of foreclosure. He stated "that the money having been deposited in court is a further reason why equity should be interposed in this case." In this we think he was clearly in error because as stated by this Court in *Union Trust Co. v. Biggs*, 153 Md. 50, 55-56, 137 Atl. 509,

"* * * although the jurisdiction of equity did not become complete until the subsequent filing of his report of sale, yet the sale of the mortgaged premises under the power of sale in the mortgage deed virtually foreclosed the mortgage and divested all rights of redemption which had remained in the mortgagor until the sale. *Warehime v. Carroll County Bldg. Assn.*, 44 Md. 512, 519; *Berry v. Skinner*, 30 Md. 567, 572-574; Miller's *Equity*, secs. 463, 466; *Albert v. Hamilton*, 76 Md. 304, 307. * * * In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor. * * * It follows that, after the day of sale, the mortgagor's equity of redemption generally ceases to exist as an interest in land."

This reasoning has been followed in the recent case of *Butler v. Daum, supra*.

The chancellor not having made a finding that the purchase price was such as would shock his conscience, we feel con-

strained to reverse his decree and remand the cause so that the sale may be ratified and the proceeds thereof distributed.

*Decree reversed and cause remanded for the passage of a decree in accordance with this opinion. Costs to be paid by appellees.*