**In re Delbert L. ALSOP and Nancy E. Alsop, Debtors.**

**Delbert L. ALSOP and Nancy E. Alsop, Plaintiffs,**

**v.**

**STATE OF ALASKA, Commissioner of Revenue for the Public Employees Retirement Fund and The First National Bank of Anchorage, Defendants.**

**Bankruptcy No. 3–80–0081.**

United States Bankruptcy Court, D. Alaska.

Nov. 6, 1981.

---

Albert Maffei, Anchorage, Alaska, for plaintiffs.

John Beard, Anchorage, Alaska, for defendants.

MEMORANDUM OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

This matter, an adversary proceeding filed in connection with a Chapter 11 reorganization proceeding pending before this Court, is now before the Court on Defendants' motion for summary judgment as to all issues, pursuant to Bankruptcy Rule 756. Plaintiffs, debtors in possession in the Chapter 11 proceeding, have requested this Court to set aside a non-judicial sale of real property under a deed of trust which named The First National Bank of Anchorage as beneficiary. Plaintiffs' amended complaint alleges that the sale is avoidable pursuant to the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.* as a preference under Section 547, and as a fraudulent transfer under Section 548. Plaintiffs further allege that the sale should be set aside on equitable grounds because of the inadequacy of the price received at the sale coupled with the surrounding circumstances. This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1471(b) and (c). The Court finds from a review of the record in this case together with the affidavits, depositions, admissions and answers to interrogatories on file, that there exists no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law as to all issues.

I. *Summary of Facts*

The affidavits, depositions, admissions and interrogatory answers on file show the following facts to be undisputed [1]:

On November 6, 1978, Plaintiffs, in consideration of a loan of $275,000 received from Defendant First National Bank (FNB), executed and delivered to FNB a promissory note in the same amount. On the same day Plaintiffs also executed, as security for the note, a deed of trust to real property, Lot 1A, Block 3, Mountain Village Plaza, located in Wasilla, Alaska, which property is the subject of this suit. The deed of trust provided for foreclosure and

sale upon default, as do AS 34.20.070–.090. The deed of trust was recorded on November 8, 1978 in the Palmer Recording District. In January, 1979, FNB sold the note to Defendant State of Alaska, Commissioner of Revenue, but continued to service the note as the State's agent.

Plaintiffs defaulted on repayment of the loan. The Trustee, the Mat-Su Title Insurance Co., gave notice of default and of a foreclosure sale to be held on June 12, 1980. The notice was served on Plaintiffs and was recorded on March 6, 1980. Pursuant to Plaintiffs' request for additional time in which to cure the default, FNB agreed to a postponement of the sale until July 11, 1980. On July 9, 1980, in return for Plaintiffs' instruction to Alaska Pacific Bank (APB) to pay to FNB $20,000 from an expected closing of the sale of some other property owned by Plaintiffs, FNB agreed to postpone the sale until August 25, 1980 at 11:30 a. m. The parties agreed that if payment of the $20,000 was made, the sale would be cancelled. The sale of Plaintiffs' other property did not close, and no payment was made to FNB. On the morning of August 25, 1980, FNB denied Plaintiffs' request for a further sale postponement, and the sale was held as scheduled. Defendant State of Alaska, Commissioner of Revenue, the only bidder at the sale, purchased the property for $301,942.08, the amount of Plaintiffs' indebtedness on the promissory note.

Plaintiffs filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 27, 1980. Schedules of assets and liabilities filed by Plaintiffs in support of the petition state that as of August 27, 1980 Plaintiffs owned property worth approximately $7,850,000 and owed debts of about $2,600,000.

On October 7, 1980, Plaintiffs filed a complaint seeking to set aside the foreclosure sale as a preference and as a fraudulent transfer, and on November 25, 1980 amended the complaint to also seek relief from the sale on equitable grounds. Plaintiffs allege that the fair market value of the property

1. Further uncontroverted facts will be discussed at Part IV, *infra.*

foreclosed was, at the time of the sale, in excess of $600,000. Plaintiffs further allege that the foreclosed property is one lot of a larger parcel owned and sub-divided by Plaintiffs. The foreclosed property is alleged to contain the source of the electrical and telephone utilities and the water supply for the remainder of the real estate development.

## II. The Fraudulent Transfer Argument

Plaintiffs claim that the foreclosure sale should be avoided as a fraudulent transfer pursuant to § 548(a)(2) of the Bankruptcy Code, 11 U.S.C. § 548.[2] They argue that the sale price of $301,942.08 was a less than reasonably equivalent value for property worth in excess of $600,000. They further argue that they were insolvent on the date of the foreclosure sale, or that the sale of the property, the centerpiece and source of utilities for Plaintiffs' project, left them with unreasonably small capital to continue their real estate development.

Defendants counter that the foreclosure was not a transfer made within one year of the filing of the Chapter 11 petition as required by § 548(a). Defendants further argue that Plaintiffs' own schedules of assets and liabilities show that Plaintiffs were not insolvent as of the date of the foreclosure sale, and that Plaintiffs failed to adequately plead and give notice of their claim under § 548(a)(2)(B)(ii). The Court finds pursuant to § 548(d)(1) that the foreclosure sale was not a transfer made within one year of the filing of the petition, and therefore the other arguments of Plaintiffs and Defendants need not be reached.

Plaintiffs argue forcefully that the foreclosure sale was a transfer within the meaning of the Bankruptcy Code. The Code's definition of "transfer" is set out at § 101(40).[3] The legislative history indicates that the definition is to be read as broadly as possible, to include any disposition of an interest in property. Senate Report No. 95–989, 95th Cong. 2nd Sess. 27 (1978); House Report No. 95–595, 95th Cong. 1st Sess. 314 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. The Fifth Circuit has held that where a foreclosure sale passes even a possessory interest alone, the sale constitutes a transfer within the meaning of § 67(d) of the Bankruptcy Act of 1898 (which section is comparable to § 548 of the Code). *Durrett v. Washington National Insurance Co.*, 621 F.2d 201, 204 (5th Cir. 1980); *Abramson v. Lakewood Bank & Trust Co.*, 647 F.2d 547, 548–549 (5th Cir. 1981). The Alaska Supreme Court has stated that in Alaska a foreclosure sale passes both title and possession to the purchaser, the execution of the deed of trust by the trustor having created only a lien. *Brand*

2. 11 U.S.C. § 548 reads, in pertinent part:
   (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
   (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or
   (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
   (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
   (ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
   . . . .
   (d)(1) For the purpose of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition.

3. § 101(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an interest in property, including retention of title as a security interest.

*v. First Federal Savings & Loan Ass'n of Fairbanks,* 478 P.2d 829, 832 (Alaska 1970). *See also* AS 34.20.090(a) and (b)[4].

■ Although the transaction that occurred at the foreclosure sale might, standing alone, satisfy the definition of transfer of § 101(40), that definition does not stand alone in § 548. Section 548(d)(1) sets out special rules to determine when a transfer is made for purposes of § 548. The transfer is deemed to have been made when it is so far perfected that a bona fide purchaser from the debtor could not have acquired an interest superior to that of the transferee. State law determines the time and method of perfection. *Lovett v. Schuster,* 633 F.2d 98, 104, (8th Cir. 1980).

■ Under Alaska law, the interest of the purchaser at a foreclosure sale is perfected at the time of the recording of the original deed of trust. The Alaska Supreme Court has held that the title of the purchaser at a foreclosure sale "relates back to the time of the execution of the deed of trust". *Alaska Laborers Training Fund v. P & R Enterprises, Inc.,* 583 P.2d 825, 826–827 (Alaska 1978). The sale by the trustee has the effect of vesting the purchaser with title as of the date the trust deed was executed. *Higley v. City of Sacramento,* 149 F.Supp. 118, 121 (N.D.Calif. 1957), cited with approval in *Alaska Laborers Training Fund, supra,* at 827, n.2. The purchaser's title cannot be affected by any adverse claims or interests arising after the execution of the deed of trust. *Id.* at 827.

■ Since under Alaska law no purchaser from Plaintiffs subsequent to Plaintiffs' execution of the deed of trust and its recordation on November 8, 1978, could have acquired an interest superior to that of the

transferee at the foreclosure sale, pursuant to the provisions of § 548(d)(1) the transfer was made as of November 8, 1978. Since this date is outside the one year period established by § 548(a), the foreclosure sale is not avoidable as a fraudulent transfer.

Support for the application of Alaska's "relation back" doctrine to the Bankruptcy Code can be drawn from several new Code and old Bankruptcy Act cases involving liens. (The Alaska Court in *Brand, supra,* 478 P.2d at 832 declared that a deed of trust creates a lien.) Under the Bankruptcy Code, the Courts in both *In re Suppa,* 8 B.R. 720, 722–723 (Bkrtcy. D.R.I. 1981), and *Matter of Jordan,* 5 B.R. 59, 61, 2 C.B.C.2d 635, (Bkrtcy.D.N.J. 1980), applied state law to relate the effects of levies made within the proscribed period of 11 U.S.C. § 547 back to the time of lien perfection, outside the period. *See also, Kapela v. Newman,* 649 F.2d 887, 892 (1st Cir. 1981); 4 Collier on Bankruptcy § 547.14 p. 547–49 (15th ed. 1981). Under the Bankruptcy Act of 1898, *see Menear v. Morgantown Community Ass'n.,* 136 F.Supp. 292, 296 (N.D.W.Va. 1955), aff'd, 235 F.2d 354 (4th Cir. 1956); *Evans v. Valley West Shopping Center Inc.,* 567 F.2d 358, 360 (9th Cir. 1978); *August v. Aldan Rubber Company,* 277 F.Supp. 652, 654 (E.D.Pa. 1967); *Clements v. Snider,* 409 F.2d 549 (9th Cir. 1969).

Plaintiffs argue that the decision in *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir. 1980), requires a finding that the transfer was made at the time of the foreclosure sale. In *Durrett,* and in the subsequent *Abramson v. Lakewood Bank & Trust Co.,* 647 F.2d 547 (5th Cir. 1981) (2–1 decision; Judge Clark dissenting), the Fifth Circuit held that deed of

---

4. AS 34.20.090. Title, interest, possessory rights and redemption.

(a) The sale and conveyance transfers all title and interest which the party executing the deed of trust had in the property sold at the time of its execution, together with all title and interest he may have acquired before the sale, and the party executing the deed of trust, his heirs and assigns have no right or privilege to redeem the property, unless the deed of trust so declares.

(b) The purchaser at a sale, his heirs and assigns are, after the execution of a deed to him by the trustee, entitled to the possession of the premises described in the deed as against the party executing the deed of trust or any other person claiming by, through or under him, after filing the deed of trust for record in the recording district where the property is located.

trust foreclosure sales held within one year prior to the filing of the bankruptcy petition were avoidable under § 67(d) of the old Bankruptcy Act (the predecessor of § 548 of the Code), even though the deeds of trust were executed outside the one year period. *Durrett* has been applied to § 548 of the Bankruptcy Code in *In re Madrid*, 10 BR. 795, 800, n.13, (Bkrtcy.D.Nev. 1981). The cases do not discuss the effect of § 67(d)(5) of the old Act (§ 548(d)(1) of the Code) or relevant state law concerning perfection, but rest on the ground that a foreclosure sale constitutes a "transfer" within the meaning of § 1(30) of the old Act (which has been superseded by § 101(40) for cases under the Code).

Insofar as *Durrett* and *Abramson* are inconsistent with this opinion, this Court declines to follow them. The conclusion that § 548(d)(1) deems the transfer to have been made at the time of the execution of the deed of trust best implements the purposes of the Bankruptcy Code and best harmonizes the Code with the body of commercial and real estate law.

The result advocated by Plaintiffs and reached in *Durrett* would significantly chill participation at foreclosure sales, to the detriment of debtors in general. Participation at foreclosure sales is minimal, and sale prices rarely approximate the actual value of the property sold.[5] Many legislatures, including Alaska's[6], do not grant the debtor a right of redemption from a non-judicial foreclosure sale in order to enhance the reliability of the title acquired at the sale and thereby encourage participation in the bidding. But the *Durrett* rule would create a *de facto* redemption right in bankruptcy situations, rendering the purchaser's title liable to upset for an indefinite period. The foreclosure sale could be set aside under § 548 in any case where a bankruptcy petition is filed within one year of the sale. The complaint to set aside the sale may be filed up to two years after the appointment of a bankruptcy trustee. 11 U.S.C. § 546(a). However, it should be noted that the appointment of a trustee may not ever occur in a Chapter 11 proceeding or may take place at some indefinite time after the commencement of the bankruptcy proceeding. 11 U.S.C. § 1104(a). The specter of this uncertainty of title will severely inhibit participation at the foreclosure sale by anyone other than the original creditor, thus depressing bid prices to the general detriment of debtors. *See* the dissent of Judge Clark in *Abramson, supra.*

The *Durrett* rule would further reduce the willingness of creditors to lend on the security of a deed of trust, to the general detriment of borrowers. Security is necessary to induce creditors to lend in the face of an uncertain future. But under the *Durrett* rule, a creditor can never be certain of his ability to reach the security. The property described in a deed of trust would provide no readily realizable security as against any debtor who becomes insolvent, although that insolvency may occur years after the original secured transaction. This severe reduction in the value of deeds of trust as security will correspondingly reduce the willingness of creditors to lend money, thereby increasing the cost of credit.[7]

Finally, the fact that a debtor has a last resort pre-foreclosure remedy to prevent or at least stay a foreclosure sale demonstrates that no necessity exists to allow the extreme post-foreclosure remedy authorized in *Durrett.* The filing of a petition in bankruptcy will trigger the automatic stay of 11 U.S.C. § 362. Default notice requirements assure debtors of notice of impending

---

**5.** *See* G. Osborne, Handbook on the Law of Mortgages § 340 at 735 (2nd ed. 1970). The Alaska Supreme Court has declared that the fact of poor participation and prices supports a policy of upholding nonjudicial foreclosure sales absent most unusual circumstances. *McHugh v. Church*, 583 P.2d 210, 214–16 (Alaska 1978).

**6.** *See* AS 34.20.090(a), *supra*, p. 986 at n. 4.

**7.** Although a secured creditor's lien may be retained pursuant to § 548(c), the uncertainty of standards, the limitation of value, and the time delays imposed by that section will greatly diminish the value of the security to a prospective creditor.

foreclosure sales. *See, e. g.* AS 34.20.070. The harsh and unsettling remedy created by the Court in *Durrett* is not needed.

### III. *The Preference Argument*

■ Plaintiffs have abandoned their original claim that the foreclosure sale constituted a preference under 11 U.S.C. § 547, by explicitly choosing not to answer Defendants' summary judgment motion as to that contention. Bankruptcy Rule 756, incorporating F.R.Civ.P. 56(b); District of Alaska Bankruptcy Rule 3, incorporating by reference District of Alaska General Rule 5(B)(4) and (H)(3); *Schofield v. Gilland*, 78 F.R.D. 279 (E.D.Tenn. 1977). Thus, the issue need not be determined.

Were it necessary to decide the preference question, application of the provisions of § 547(e)(1)(A) would require the Court to conclude that the transfer for purposes of § 547 was made at the time of execution and recordation of the deed of trust, outside of the preference period as delimited by § 547(b)(4)(A). *See* the analysis in Sec. II, *supra.*

### IV. *The Equitable Argument*

The final issue concerns Plaintiffs' claim that the foreclosure sale should be set aside because of an inadequate sale price together with the circumstances surrounding the sale. Defendants have the burden of showing the absence of any genuine issue of material fact, in order to gain summary judgment. Bankruptcy Rule 756, incorporating F.R.Civ.P. 56(c); *Beltz Travel Service, Inc. v. International Air Transport Ass'n*, 620 F.2d 1360, 1364 (9th Cir. 1981). All evidence and inferences drawn therefrom are viewed in the light most favorable to Plaintiffs. *Id.* at 1364.

The evidence, viewed most favorably as to the Plaintiffs, shows the relevant circumstances surrounding the sale to be as follows:

On July 9, 1980, two days before the re-scheduled foreclosure sale, Plaintiff Delbert Alsop met with two officers of Defendant FNB and requested a second extension of time in which to cure the default. Mr.

Alsop represented that he would shortly receive sufficient funds from a sale of other property to enable him to pay $20,000 to FNB. The sale of the other property was to be closed through Alaska Pacific Bank (APB). On Plaintiffs' instruction to APB to pay to FNB $20,000 from the proceeds of the second sale, FNB agreed to postpone the foreclosure sale on the Wasilla property for 45 days, until August 25, 1980. Plaintiff and FNB also agreed that if payment of the $20,000 was received by FNB, FNB would cancel the foreclosure sale. The sale of Plaintiffs' other property did not close, and FNB received no payment. Plaintiffs knew that at some point before or at the closing of the second sale they would be required to sign and execute a deed to transfer the property. Plaintiffs made no effort to monitor the closing of the other sale or the payment to FNB until the morning of August 25, 1980 when Plaintiffs' Anchorage attorney called FNB and learned that no money had been received. Plaintiffs did not monitor the affairs because Mr. Alsop "thought there was some kind of legal requirement" that he receive further notice if the foreclosure sale was to be held on August 25, 1980.

Further, assuming all of Plaintiffs' allegations to be true for purposes of this motion, the Court must consider that the foreclosure sale brought proceeds of $301,942.08 for property worth in excess of $600,000, and that the sale has removed from Plaintiffs' real estate development the lot containing the source of electrical and telephone utilities and water supply.

■ A suit to set aside a foreclosure sale under a deed of trust is an equitable one. *Brown v. Busch*, 152 Cal.App.2d 200, 313 P.2d 19, 21 (1957); *Doherty v. Adal Corp.*, 437 Pa. 109, 261 A.2d 311, 313, (1970). State law governs questions concerning property rights, at least where there is no conflict with the bankruptcy laws. *Fowler v. Pennsylvania Tire Co.*, 326 F.2d 526, 530 (5th Cir. 1964); *Reid v. Richardson*, 304 F.2d 351, 353 (4th Cir. 1962).

The Alaska Supreme Court has held that a foreclosure sale under a deed of trust will be set aside only if the price received was inadequate and the sale was tainted with either fraud or unfairness.[8] *McHugh v. Church*, 583 P.2d 210, 218 (Alaska 1978). Although Alaska's concept of "unfairness" has not been explained in detail, it may include such things as taking undue advantage of an owner to his prejudice or lulling him into a false sense of security. *Id.* at 213. The Alaska Supreme Court has stated that it is reluctant to set aside foreclosure sales, "except in the most unusual circumstances." *Id.* at 216, citing *Semlek v. National Bank of Alaska*, 458 P.2d 1003, 1006 (Alaska 1969).

Plaintiffs have not alleged fraud. The affidavits of FNB's officers and the deposition testimony of Plaintiff Delbert Alsop show that both parties realized and agreed that the foreclosure sale was only postponed until August 25, 1980, that receipt of $20,000 by FNB would be necessary for cancellation of the sale, and that no employee of FNB represented to Plaintiffs that FNB would notify them if the payment was not received or if the foreclosure sale was to be held as re-scheduled.

Accepting all of Mr. Alsop's deposition testimony as true, the evidence shows no unfairness to Plaintiffs as a matter of law. Plaintiffs knew that the sale had only been postponed, and they knew that cancellation depended on FNB's receipt of $20,000. The sale of Plaintiffs' realty was a matter more within their own peculiar knowledge than that of FNB. Mr. Alsop's own testimony reveals that his expectation of further notice of the August 25, 1980 foreclosure sale arose from his own beliefs concerning the law's requirements and not from any action or statement on the part of FNB. Plaintiffs have not alleged that either they or their attorney were prevented from calling FNB or APB prior to the morning of the sale. Any detriment to Plaintiffs arose from their own mistake and/or inattentiveness.

*Waring v. Guy*, 248 Md. 544, 237 A.2d 763 (1968), supports the conclusion that the "unfairness" doctrine cannot excuse Plaintiffs' own mistake. In *Waring* a defaulting mortgagor allowed a foreclosure sale to occur without taking action, because of her own mistaken belief that the mortgagee's attorney had told her that the sale would not occur. In denying relief the court stated:

> There was no reason presented to us and we know of none why a properly advertised and conducted foreclosure sale should be set aside because of mistaken belief on the part of a defaulting mortgagor that the sale would not be held, when that belief was not the result of any fraud, misrepresentation, or any other misconduct by any other party, especially when the defaulting mortgagor could have, by slight effort and in the exercise of reasonable prudence, ascertained that her belief that the sale would not be held was mistaken.

*Id.* 237 A.2d at 766.

The reasoning of the *Waring* court applies as well to the facts of this case. The facts, viewed most favorably to Plaintiffs, do not present the "most unusual circumstances" required by Alaska law to upset a foreclosure sale. Defendants are entitled to judgment as a matter of law dismissing Plaintiffs' complaint.

8. Plaintiffs have argued only a state law claim; however, since Congress has specified in § 548 a one year period for avoiding a transfer of property of an insolvent debtor for an inadequate price, even a federal rule of equity would have to require something more than simply a failure to pay a reasonably equivalent value in order to set aside a transfer outside the one year period.