COLSTON v. AUSTIN RUN MINING CO.

(Circuit Court of Appeals, Third Circuit.    April 3, 1912.)

No. 1,584.

BANKRUPTCY (§ 56*)—"ACT OF BANKRUPTCY."

Where a validly created and subsisting lien for more than four months before the filing of a petition in involuntary bankruptcy of the debtor is enforced within the statutory four months and while the debtor is insolvent, the mere failure of the debtor, while insolvent, to vacate or discharge the lien within the statutory period, and at least five days before a sale or final disposition of the property affected, does not constitute an "act of bankruptcy," within Bankruptcy Act July 1, 1898, c. 541, § 3a; 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), defining acts of bankruptcy, since the priority obtained by reason of the lien is obtained when the lien attaches.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 61–65, 67, 68, 86–96; Dec. Dig. § 56.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

Appeal from the District Court of the United States for the District of Delaware.

Petition in involuntary bankruptcy by Fred M. Colston and others against the Austin Run Mining Company. From a decree of dismissal, rendered after sustaining a demurrer to the petition, petitioner named appeals. Affirmed.

The following is the opinion of the court below, by Bradford, District Judge.

This case is before the court on demurrer to a petition in involuntary bankruptcy filed by Thomas M. Mackey and others against the Austin Run Mining Company, a corporation of Delaware. The clause setting forth the act of bankruptcy is as follows:

"And your petitioners further represent that said Austin Run Mining Company is insolvent, and that within four months next preceding the date of this petition, the said Austin Run Mining Company committed an act of bankruptcy, in that it did heretofore, to wit, on the 31st day of May, A. D. 1911, suffer and permit while insolvent, William J. Westcott, a creditor, to obtain a preference over other creditors of said corporation through legal proceedings, in an action of foreign attachment and to obtain a decree therein against the said Austin Run Mining Company, for payment of a debt of $41,080.69, entered in the Corporation Court of the City of Fredericksburg, in the County of Stafford, in the State of Virginia, and in said legal proceedings an order of sale was made on said date by said court, whereby all the real and personal property of said Austin Run Mining Company, situated in the County of Stafford, State of Virginia, consisting of lands, railways, sidings, cars, buildings, mines, mining rights, franchises, tools and other property of the said corporation, were ordered to be sold at public sale, after due notice, and the same is advertised to be sold on Friday, August 18, 1911, at the courthouse at Fredericksburg, in the State of Virginia, for the satisfaction of said debt of $41,080.69, and certain liens and claims in the order of priority thereof. Whereby the said William J. Westcott is about to obtain an unlawful preference over other creditors of the said Austin Run Mining Company by the payment of said debt, and the said Austin Run Mining Company not having at least five days before the said sale and final disposition of said property affected by said preference vacated or dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charged such preference. The said property about to be sold being all the property of the said corporation."

In section 3a of the bankruptcy act it is provided:

"Acts of bankruptcy by a person shall consist of his having  *  *  *  (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

And in section 3b it is provided:

"A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act."

Admittedly the only subdivision of section 3a which by any possibility can apply to the facts here admitted on demurrer is the third. The petition states in effect that in the foreign attachment proceedings a decree for the payment of the debt of $41,080.69 was recovered, and that an order of sale of the attached property was made May 31, 1911, which was within the space of four months next preceding the date of filing the petition. Evidently what is relied upon as constituting a preference is, not the creation of the lien under and by virtue of the foreign attachment, but the order of sale within the statutory period coupled with the failure on the part of the alleged bankrupt to secure a discharge of the property from sale or liability to sale under such order. For the petition after referring to the order of sale and advertisement thereunder avers "whereby the said William J. Wescott is about to obtain an unlawful preference  *  *  *  by the payment of said debt," etc. But the burden rested on the petitioning creditors to set forth that the lien under and by virtue of the foreign attachment was created during the statutory period of four months if it was essential to a sufficient averment of an act of bankruptcy under section 3a (3) that the creation of the lien should have occurred during that period. It is nowhere alleged in the petition, however, when the foreign attachment issued and became operative as a lien. The language employed in the petition is such that no violence would be done to it by holding either that the lien came into existence only during such period, or that it was created prior to its commencement. It cannot be assumed that the lien was created within and not prior to that period. Where a pleading is fairly susceptible of two constructions it is an elementary rule that, other things being equal, that construction will be adopted which is less favorable to the pleader. This Court is, therefore, bound to assume that the lien of the foreign attachment became operative prior to the commencement of the four months, and in making this assumption no injustice can be done to any one, for it was distinctly admitted by the counsel for the petitioning creditors in open court during the hearing on demurrer, and the argument of counsel on both sides proceeded on the ground, that the lien of the foreign attachment was a valid lien upon the property of the alleged bankrupt, subsequently ordered to be sold, much longer than four months next before the filing of the petition in bankruptcy. The question thus is presented whether an attempted enforcement while insolvent within the space of four months next before the filing of a petition in involuntary bankruptcy of a lien on the property of the alleged bankrupt validly created and subsisting for more than that period, coupled with an omission by him to secure, at least five days before a sale or final disposition of such property, the vacation or discharge of such lien, constitutes an act of bankruptcy under section 3a. Mere failure while insolvent to vacate or discharge the lien within the statutory period of four months and at least five days before a sale or final disposition of the property affected clearly does not constitute an act of bankruptcy. In addition to such failure it is essential that the alleged bankrupt should within that period of four months have "suffered or permitted while insolvent" the lien to be obtained; for the "act of bankruptcy" by section 3b must have occurred within four months next before the filing of the petition, and its commission includes a combination of three essential elements, namely, first, suffering or permitting the obtaining of the lien of the foreign attachment; second, insolvency of the alleged bankrupt at the time; and,

third, failure to vacate or discharge the lien in manner above mentioned. There are several provisions of the bankruptcy act pertinent in this connection. While section 3a (3) mentions a "preference through legal proceedings," sections 60a, 67c and 67f also relate to preferences and throw much light on the point to be decided. Section 60a defines a preference through legal proceedings as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition * . * * procured or suffered a judgment to be entered against himself in favor of any person * * * and the effect of the enforcement of such judgment * * * will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Section 67c provides for the dissolution by the adjudication of bankruptcy of liens resulting from judicial proceedings under certain circumstances, as follows:

"A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act; or if the dissolution of such lien would militate against the best interests of the estate of such person the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien," etc.

Section 67f, relating to the same general subject, provides:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent at at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate," etc.

It is impossible to read these various provisions without being forced to the conclusion that no lien or preference created or suffered by the bankrupt in legal proceedings is avoided or rendered voidable by the adjudication in bankruptcy unless created or suffered within the period of four months next preceding the filing of the petition. And it is equally clear that a judgment or decree merely for the enforcement of a pre-existing lien is not in the contemplation of the bankruptcy act a preference, and consequently if founded on a lien existing prior to the statutory period of four months will not be set aside or injuriously affected, although obtained within that period. This doctrine has been authoritatively applied even where the lien was not perfect in the sense of being absolute, unconditional and indefeasible. In Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, it was held that the bringing of a judgment creditor's bill more than four months before the filing of a petition in bankruptcy created an equitable lien on the assets of the bankrupt, though contingent in a certain sense, and that a judgment or decree for the enforcement of the lien recovered less than four months before the filing of the petition was not obnoxious to the provisions of the bankruptcy act. The court, through Chief Justice Fuller, after quoting section 67f, said:

"In our opinion the conclusion to be drawn from this language is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise that is invalidated, and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized.

When it is obtained within four months the property is discharged therefrom, but not otherwise. A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens. If this were not so the date of the acquisition of a lien by attachment or creditor's bill would be entirely immaterial."

If a valid lien antedates the statutory period of four months a judicial ascertainment of the extent of such lien and the enforcement of it are legitimate and proper; not being forbidden by any of the provisions of the bankruptcy act. And this is true in certain cases where the lien is only inchoate at the commencement of the statutory period and where something must still be done to render it perfect. In Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, it appears that in April, 1891, one Moore, in Vermont, gave to the defendant a chattel mortgage of certain existing livery property and of similar property thereafter to be purchased or acquired by him. Moore filed a petition in voluntary bankruptcy June 30, 1900, and shortly thereafter was duly adjudged a bankrupt. The chattel mortgage had been duly executed and recorded years before the filing of the petition in bankruptcy. The defendant, within four months before the filing of the petition, took possession under the chattel mortgage of all the livery property then on hand, it being after-acquired property, and June 11, 1900, caused the same to be sold at public auction by the sheriff. The suit was brought by the trustee in bankruptcy to recover from the defendant the proceeds of sale on the ground, as claimed, that the action of the defendant in taking possession and making sale of the after-acquired property was unlawful under the provisions of the bankruptcy act. The Court, after referring to Sabin v. Camp (C. C.) 98 Fed. 974, said:

"The principle that the taking possession may sometimes be held to relate back to the time when the right so to do was created is recognized in the above case. So in this case, although there was no actual existing lien upon this after-acquired property until the taking of possession, yet there was a positive agreement, as contained in the mortgage and existing of record, under which the inchoate lien might be asserted and enforced, and when enforced by the taking of possession, that possession, under the facts of this case, related back to the time of the execution of the mortgage of April, 1891, as it was only by virtue of that mortgage that possession could be taken. The Supreme Court of Vermont has held that such a mortgage gives an existing lien by contract, which may be enforced by the actual taking of possession, and such lien can only be avoided by an execution or attachment creditor, whose lien actually attaches before the taking of possession by the mortgagee. Although this after-acquired property was subject to the lien of an attaching or an execution creditor, if perfected before the mortgagee took possession under his mortgage, yet if there were no such creditor, the enforcement of the lien by taking possession would be legal, even if within the four months provided in the act. There is a distinction between the bald creation of a lien within the four months, and the enforcement of one provided for in a mortgage executed years before the passage of the act, by virtue of which mortgage and because of the condition broken, the title to the property becomes vested in the mortgagee, and a subsequent taking possession becomes valid, except as above stated."

In line with Thompson v. Fairbanks is the subsequent case of Fisher v. Zollinger, 149 Fed. 54, 79 C. C. A. 76, decided by the circuit court of appeals for the sixth circuit.

In the case of In re Blair (D. C.) 108 Fed. 529, it was held that where there was an attachment on mesne process more than four months before the filing of the petition in bankruptcy, the obtaining of judgment and levy of execution within that period were not forbidden by the bankruptcy act. The Court said:

"It is urged that whatever be the lien created by an attachment standing alone, that lien cannot be enforced by judgment entered or levy made within four months of the filing of the petition. Where, however, the lien is created by the attachment, the judgment and levy create no new or additional lien, but only enforce a lien already existing. Hence in this case the levy and

execution did not affect the property attached with a lien avoided by the bankrupt act, but only enforced a lien already existing, which lien the bankrupt act expressly protected. The meaning of the subsection [67f] appears to be this: Under some circumstances, all liens obtained through legal proceedings are avoided, in whatever part of the suit or by whatever form of proceeding they are created. If the lien is created by the levy, then the lien of the levy is avoided; if created by the judgment, then the lien of the judgment is avoided; if created by the attachment, then the lien of the attachment is avoided; but, if the lien created by the attachment is saved, that lien may be enforced by appropriate proceedings, even though such proceedings include a judgment and levy made within the limited time."

So in the case of In re Beaver Coal Co., 113 Fed. 889, 51 C. C. A. 519, it was held by the circuit court of appeals for the ninth circuit that section 67f does not invalidate the lien of an attachment obtained more than four months before the filing of the petition in bankruptcy, though the judgment and order of sale necessary for its enforcement are not secured until after the commencement of that period. The Court said:

"The judgment order so made does not create a new lien nor discharge the old. It directs only the enforcement of the lien. It is similar in its nature to a decree for the foreclosure of a mortgage. It sustains the attachment lien and subjects the attached property to its satisfaction. Construing the language above quoted from section 67f, we think it refers solely to liens, and that it does not mean that all judgments rendered within four months prior to bankruptcy shall be null and void. The use of the words 'judgments * * * or other liens' indicates that it was the purpose of the act to avoid liens only which were obtained by judicial proceedings within the prescribed time, and not to declare void judgments as such. This view is in harmony with other provisions of the bankruptcy law. Judgments rendered, even after bankruptcy, are sustained as determining the claim thereby adjudged. Section 63a. In brief, the intention of the act was to set aside preference liens obtained by legal proceedings within four months prior to bankruptcy. The lien in the present case was 'obtained' by the attachment. The bankruptcy law recognizes all valid liens that existed four months prior to bankruptcy proceedings. The attachment lien was not discharged nor was its nature altered by the judgment. It required no judgment or levy to make it good as a lien. It would have remained a valid lien if no judgment had been taken. No lien was 'obtained' by the judgment, and none was lost thereby."

The foregoing cases and others unnecessary to cite show that the enforcement by sale within the period of four months next before the filing of the petition in bankruptcy of a lien or other preference obtained through judicial proceedings more than four months before such filing is not in contravention of any of the provisions of the bankruptcy act, and virtually control the decision of the point now before this court. For it follows as a corollary from the doctrine of those cases that the omission of the debtor to prevent the creditor from doing precisely what the law allows him to do cannot be imputed to him as a fault, actual or constructive, or render that an act of bankruptcy which without such permissible action on the part of the creditor would fail to furnish the basis for an adjudication. In Owen v. Brown, 120 Fed. 812, 57 C. C. A. 180, the circuit court of appeals for the eighth circuit dealt with a case in which the alleged act of bankruptcy consisted of the failure of the alleged bankrupt to vacate and discharge five days before sale a judgment which had become a lien on real estate more than four months before the filing of the petition, in fact prior to the passage of the bankruptcy act. The court held that the petition could not be sustained, saying:

"The contention of the appellants is that the judgment creditor obtained a preference and the act of bankruptcy was committed when the defendant's real estate was sold on execution, without regard to the date of the judgment on which the execution was issued, and regardless of the fact that the judgment was a lien on the real estate of the defendant sold on the execution from the date of its rendition. This contention finds no support in the

bankrupt act or on principle. * * * The 'preference through legal proceedings' mentioned in subdivision 3 is a preference obtained by such means within four months next preceding the filing of the petition in bankruptcy. Neither the third subdivision of section 3a, nor any other provision of the bankrupt act, contemplates that valid judgment liens on real property acquired before tthe passage of the act, or more than four months before the filing of the petition in bankruptcy, shall be vacated; or that the due enforcement of such liens by execution shall constitute an illegal preference, which would be exactly tantamount to vacating or annulling the lien itself. * * * The judgment creditor's right to have this real estate sold on execution and the proceeds of the sale applied to the payment of his judgment was acquired when the lien of the judgment attached to the real estate and not when the execution sale took place. As the judgment creditor did not, within four months of the filing of the petition in bankruptcy, obtain 'a preference through legal proceedings' there was no 'such preference' for the defendant to vacate or discharge, and the third subdivision of section 3a does not, therefore, apply to this case. The preference was obtained when the lien attached, and not when it was enforced. When the creditor obtains no preference within four months the debtor suffers or permits none for which he can be adjudged a bankrupt. Under the construction of the act contended for by the appellants it would be useless for a creditor to take a mortgage or obtain a judgment lien on the property of his debtor in any case; for years after he obtained his lien, and whenever by appropriate judicial proceedings he enforced the same to procure satisfaction of his debt, he would be met by the proposition that by the 'legal proceedings' he had resorted to to enforce his lien he had thereby obtained 'a preference through legal proceedings'; and the judgment debtor, for suffering or permitting such preference, would be adjudged a bankrupt, and the proceeds of the creditor's security would inure to the equal benefit of all the debtor's creditors. The bankrupt act does not work any such fell destruction of securities."

The court further held that the decisions of Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, and Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, "must be held to conclude this question," saying:

"Though other provisions of the bankrupt act were under consideration in those cases, the reasoning of the court is equally applicable to the provision of the act under consideration in this case."

While there is some conflict in the cases a clear preponderance of the decisions, both in number and weight of reasoning, supports the conclusion that the omission of the alleged bankrupt to vacate or discharge the attachment lien or the judgment or order of sale was, under the circumstances, wholly without culpability, and that no act of bankruptcy has been committed. It is not necessary to discuss or refer to the several other objections raised on demurrer. The petition must be dismissed, with costs.

Charles L. Smyth (Ward W. Pierson and J. Howard Reber, on the brief), for appellant.

Claude L. Roth (John W. Brady, on the brief), for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

GRAY, Circuit Judge. This is an appeal by a creditor or creditors of the Austin Run Mining Company, a corporation of the state of Delaware, from the judgment of the court below sustaining a demurrer to the petition filed by said creditors, alleging that the said respondent had committed an act of bankruptcy, in that on the 31st day of May, 1911, it had permitted, while insolvent, one William J. Westcott, a creditor, to obtain a preference over other creditors of said corporation, through legal proceedings in an action of foreign attach-

ment in the state of Virginia, and to afterwards obtain a decree thereon for the payment of a debt of $41,080.69, entered in a court of that state; that in said legal proceedings, an order of sale was made on said date by the court, whereby all the real and personal property of the respondent corporation, situated in the county of Stafford, state of Virginia, was ordered to be sold at public sale; and that the same was advertised to be sold on Friday, August 13, 1911; by which order of sale, it is alleged that Westcott was about to obtain an unlawful preference over other creditors of the Austin Run Mining Company by the payment of said debt, that company not having, at least five days before said sale and final disposition of said property affected by such preference vacated and discharged the same.

To the petition thus filed, a demurrer was interposed by the alleged bankrupt, on the general ground that the said petition did not state facts sufficient to warrant an adjudication of bankruptcy. The petition did not state the date on which the writ of foreign attachment issued and the lien thereof became operative. The court, however, felt bound to assume that the lien of the foreign attachment became operative prior to the commencement of the four months preceding the filing of the petition, and it was afterwards admitted by the counsel for the petitioning creditors during the hearing on the demurrer, and the argument of counsel on both sides proceeded on the ground, that the lien of the foreign attachment was a valid lien upon the property of the alleged bankrupt subsequently ordered to be sold, much longer than four months next before the filing of the petition in bankruptcy.

The question is thus presented, as stated by the court below, whether an attempted enforcement while insolvent within the space of four months next before the filing of a petition in involuntary bankruptcy, of a lien on the property of the alleged bankrupt validly created and subsisting for more than that period, coupled with an omission by him to secure, at least five days before a sale or final disposition of such property, the vacation or discharge of such lien, constitutes an act of bankruptcy under section 3a of the Bankruptcy Act. There has been some conflict in the decisions upon this question, but we agree with the learned judge of the court below that both reason and the weight of authority compel the conclusion that mere failure, while insolvent, to vacate or discharge the lien within the statutory period of four months, and at least five days before a sale or final disposition of the property affected, does not constitute an act of bankruptcy. Priority is obtained when a lien attaches, and not when it is enforced. The date of the sale is immaterial in this respect; whenever it takes place, it relates back to the date when the lien attached. The attaching creditor in the case before us, therefore, did not obtain a preference by the decree liquidating his debt. In the language of Mr. Chief Justice Fuller, in Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122:

"A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute (section 67f of the Bankruptcy Act of 1898), which is plainly confined to judgments creating liens."

It is not our purpose, however, to discuss at length the interesting question raised by this appeal. The authorities in support of our conclusion, as well as those that conflict therewith, have been elaborately discussed in the well-reasoned opinion of the learned judge of the court below, and its decree is hereby affirmed.