**In the Matter of George R. EWING, Debtor.**

**Donald R. CALAIARO, Esq., Trustee, Plaintiff,**

v.

**PITTSBURGH NATIONAL BANK and Coventry Care, Inc., Defendants.**

**Bankruptcy No. 80–1227.**

**Adv. No. 82–104.**

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 19, 1983.

Edward A. Olds, Pittsburgh, Pa., for trustee.

Timothy Snodgrass, Pittsburgh, Pa., for Coventry Care, Inc.

Gary Hunt, Pittsburgh, Pa., for Pittsburgh Nat. Bank.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is a complaint to avoid a fraudulent transfer, wherein Trustee alleges that secured creditor's involuntary pre-petition sale of stock pledged by Debtor for less than its reasonably equivalent value constitutes a fraudulent transfer under § 548 of the Bankruptcy Code and the Pennsylvania Fraudulent Conveyance Act. Trustee also alleges that the foreclosure sale was not conducted in conformity with reasonable commercial practices as required by the Uniform Commercial Code.

The Court has agreed to confine its present determination to the issue of fraudulent conveyance under the Bankruptcy Code. The remaining issues of fraudulent conveyance under state law and commercial unreasonableness raised in plaintiff's complaint and defendants' motions to strike will be considered at a later date, if necessary.

The facts are briefly as follows. Commencing on or about November 12, 1968,

and at various times thereafter, Debtor borrowed sums of money from Pittsburgh National Bank, hereinafter "PNB"; and executed promissory notes and pledge agreements to secure said debt. In September, 1977, Debtor borrowed the sum of $67,000.00 from PNB at which time he pledged 75,000 shares of Class B common stock and 9,500 shares of Class A common stock in Coventry Care, Inc. hereinafter "CCI" to secure the repayment of his indebtedness.

Upon Debtor's default, PNB commenced an involuntary sale of Debtor's shares of CCI. The sale was consummated on April 10, 1980, at which time, CCI purchased the shares for the amount of $72,500.00. Some months later, in August, 1980, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The case was subsequently converted to a Chapter 7.

The parties have stipulated that prior to the closed bid sale, PNB advertised the sale in the Wall Street Journal and Pittsburgh Post Gazette. Notice of sale and conditions thereto were sent to those parties who appear on Exhibit D of the Stipulation.

In his brief, Trustee presents the following arguments. A sale of Debtor's equity interest in secured collateral can be interpreted as a fraudulent conveyance pursuant to § 548 of the Bankruptcy Code, which allows the Trustee to avoid any transfer of an interest in debtor's property within one year prior to the filing of the bankruptcy petition while debtor is insolvent for which he receives less than reasonably equivalent consideration. Trustee further argues that the transfer, for purposes of § 548, occurred at the time of sale in April, 1980. Prior thereto, PNB's interest in the stock was limited to that necessary to secure repayment of the loan; and Debtor retained property rights in the remaining value. Finally, Trustee asserts that § 548 is applicable to involuntary foreclosures as well as voluntary transfers by the Debtor.

In its brief in support of its motion to dismiss Trustee's complaint, PNB argues as follows. The transfer which Debtor claims to have been fraudulent within the meaning of § 548 occurred outside the one-year period prior to the filing of the bankruptcy petition and is therefore not vulnerable to attack under § 548. PNB asserts that by virtue of the Uniform Commercial Code, a security interest in instruments is perfected by possession. Since PNB had possession of the securities at all times subsequent to the pledge, its security interest was perfected as against a bona fide purchaser. Therefore, the transfer occurred at the time of the pledge, in September, 1977; or at the latest, upon execution of a new pledge agreement in 1978.

In its brief in support of its motion to dismiss, CCI argues that a sale brought by a secured creditor to enforce its perfected lien in Debtor's property is not a fraudulent conveyance within the meaning of § 548. CCI first asserts that § 548 only pertains to actions taken by the Debtor, and does not include actions taken by a secured creditor in foreclosure upon the collateral. CCI further asserts that since the transfer occurred upon delivery of possession of the pledged stock to PNB in September, 1977, § 548 is inapplicable.

Having summarized the arguments of counsel, the Court now turns to the relevant provisions of the Bankruptcy Code. Section 548(a)(2)(A) provides as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

Section 101(40) defines "transfer" as follows:

(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an inter-

est in property, including retention of title as a security interest.

Section 548(d)(1) further states as follows:

(d)(1) For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition.

The Court now examines related case law in order to ascertain whether an involuntary transfer by a secured creditor constitutes a transfer within the meaning of § 548, as well as when the transfer is deemed to have occurred.

Counsel for CCI relies upon the case of *Lovett v. Shuster,* 633 F.2d 98 (8th Cir.1980) decided under the Bankruptcy Act. Therein, the Court considered whether the transfer of collateral for purposes of 67(d) (the fraudulent conveyance provision) took place upon debtor's delivery of stock to the secured party; or upon assignment of title to the secured party. The Court held that for purposes of 67(d)(2), collateral was transferred upon delivery of possession. However, in *Lovett, supra,* the factual situation was significantly different from that at bar for the foreclosure sale took place some months after the filing of the petition in bankruptcy.

Counsel for the defendants cite the case of *In re Alsop,* 14 B.R. 982, 8 B.C.D. 335, 5 C.B.C.2d 797 (Bkrtcy.D.Alaska 1981) in support of their position that a foreclosure sale within one year of bankruptcy does not constitute a transfer within the meaning of § 548. However, other courts have reached different results. In *Durrett v. Washington Nat. Ins. Co.,* 621 F.2d 201 (5th Cir. 1980), Debtor-in-Possession under the Bankruptcy Act sought to vacate the transfer of real property nine days prior to filing. The Fifth Circuit affirmed the District Court's

holding that a non-judicial sale constituted a transfer within the meaning of § 67(d). The Court further held that the sale price of $115,400 for a parcel valued by the Court at $200,000 was not a fair equivalent and was therefore avoidable under § 67(d).

In *Abramson v. Lakewood Bank and Trust Company,* 647 F.2d 547 (5th Cir.1981) *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982), the Fifth Circuit reversed a lower court decision that a non-judicial foreclosure sale of debtor's land was not a transfer within the meaning of § 67(d). The Court states: "... as this transfer occurred within the one-year period, it is subject to being set aside as fraudulent if it was made without fair consideration." (p. 549).

Other courts have reached similar results under the Bankruptcy Code. In *In re Jones* 20 B.R. 988 (Bkrtcy., E.D.Pa., 1982), Judge Goldhaber held that where a sheriff's sale within one year of filing while debtor was insolvent failed to bring a reasonably equivalent value, it was avoidable under § 548(a)(2). Similar conclusions have been reached in *In re Smith,* 21 B.R. 345 (Bkrtcy. M.D.Fla.1982); and *Matter of Marshall,* 15 B.R. 738 (Bkrtcy.W.D.N.C.1981).

While the foregoing cases deal with foreclosure upon real estate, the issue at bar concerns the involuntary sale of securities pledged as collateral. Under Pennsylvania law, upon a contract of pledge, title in the pledged property remains in the pledgor subject to a lien in favor of the pledgee for the amount of the debt. Further, the pledgee is liable for return of the pledged property upon satisfaction of the obligation. *In re Gordon,* 344 Pa. 262, 25 A.2d 304 (1942). Moreover, under the provisions of the Pennsylvania Uniform Commercial Code applicable to the pledge at bar, the secured creditor must account to the debtor for any surplus resulting from the secured creditors disposition of the collateral upon debtor's default. 13 Pa.C.S.A. § 9504(b).

In the case at bar, PNB was the holder of a properly perfected security interest in the securities pledged as collateral

for repayment of Debtor's obligation. However, Debtor retained an interest in the collateral to the extent that its value exceeded PNB's secured debt. It was only upon sale of the collateral to CCI that Debtor's interest therein was extinguished. Therefore, the Court is convinced that the transfer, for purposes of § 548, occurred on April 10, 1980; the date of sale.

Based upon the foregoing, the Court is satisfied that for purposes of § 548, the involuntary sale of stock in the case at bar constituted a transfer within one year of the filing of the petition while Debtor was insolvent, or rendered insolvent thereby. If after further testimony it is determined that the sale was not for reasonably equivalent value, the transfer will be avoided pursuant to § 548.