In re NEW YORKETOWN ASSOCIATES
a/k/a Yorketown Associates, Debtor.

NEW YORKETOWN ASSOCIATES
a/k/a Yorketown Associates,
Plaintiff,

v.

PIERCE, URSTADT, MAYER &
GREER, INC., Defendant.

Bankruptcy No. 83–04486G.

Adv. No. 83–2303G.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 23, 1984.

Nathan Lavine, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for debtor/plaintiff, New Yorketown Associates a/k/a Yorketown Associates.

Jack B. Justice, White & Williams, Philadelphia, Pa., for the defendant, Pierce, Urstadt, Mayer & Greer, Inc.

Charles M. Golden, Daniels, Golden & Saltz, P.C., Philadelphia, Pa., for Fidelity American Mortg. Corp.

Norman M. Kranzdorf, Bala Cynwyd, Pa., Trustee, Fidelity America Mortg. Corp.

Alexander N. Rubin, Jr., Rubin, Quinn & Moss, Philadelphia, Pa., for trustee, Norman M. Kranzdorf.

Neal D. Colton, Dechert, Price & Rhoads, Philadelphia, Pa., for secured mortgage noteholders in FAMCO.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., and Lawrence R. Scheetz, Williams & Schildt, Richboro, Pa., Co-counsel for creditors' committee in FAMCO.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The predominant issue in the controversy before us is whether a debtor may set aside a sheriff's sale under 11 U.S.C. § 548 of the Bankruptcy Code ("the Code") when that sale occurred within one year prior to the filing of the bankruptcy petition and generated less than a reasonable equivalent value for the property. For the reasons set forth below, we hold that while the sheriff's sale may be set aside under § 548 in a proper case, this is not such a case. Accordingly, we will dismiss the complaint.

The facts of the case at bench are as follows:[1] New Yorketown Associates[2] ("the debtor") is a limited partnership having one general partner, Fidelity American Mortgage Company ("FAMCO"). The defendant's predecessor in interest owned a parcel of realty that was improved by a building, both of which were sold to FAMCO in exchange for some notes and a mortgage on the premises. In 1979, FAMCO transferred the building to the debtor but, after FAMCO granted the debtor a ten year lease in the realty, the land underlying the building was conveyed in 1981 to an entity known as Area Management Corp. ("Area"). Title to the building was conveyed in 1981 from the debtor to Yorketown Partners Limited ("YPL"), a Florida partnership. Later that year Area and YPL transferred their interests in the property to Yorketown Apartments Limited ("YAL"). More recently, the mortgage and notes fell into default, causing the defendant to commence foreclosure proceedings which culminated in a sheriff's sale of the property at which the defendant was the successful bidder at $297,000.00. At the time of the sheriff's sale the fair market value of the property, excluding encumbrances, was between $2,000,000.00 and $2,400,000.00 and was subject to a lien held by the defendant in an amount in excess of $3,000,000.00. The debtor filed a petition for reorganization under chapter 11 of the Code within one year after the foreclosure, and then filed the complaint at issue requesting that we set aside the sheriff's sale under either of two causes of action, the first of which arises under § 548(a)(2)(A) and (B)(i). The second is predicated on Pennsylvania's Uniform Fraudulent Conveyance Act which is apparently being asserted in this proceeding through 11 U.S.C. § 544(b).

The debtor concedes that it did not have record title to either the building or the realty immediately prior to the sheriff's sale which is the subject of this action. For a debtor to prevail under § 548 or the Fraudulent Conveyance Act, the debtor must assert having had some interest in the property immediately prior to the challenged conveyance. The debtor ostensibly may meet this requirement based on its assertion that its conveyance of the building to YPL was fraudulent and thus *that* conveyance should also be set aside. Consequently, in the action at bench we have one fraudulent conveyance action nested inside another.

Under § 548(a)(2)(A) and (B)(i) the trustee may avoid a transfer of the debtor's property which occurred within one year prior to the filing of the petition if the debtor received less than a reasonably equivalent value in exchange for the transfer and was insolvent when the transfer was made or became insolvent as a result thereof. Notwithstanding the clear language of 11 U.S.C. § 101(41)[3] of the Code, the defendant asserts that a foreclosure does not constitute a transfer under the Code. We have held that the foreclosure of a parcel of the debtor's realty within the one year preceding the filing of the petition may be set aside under § 548(a)(2)(A) and (B)(i) if warranted by the facts. *Home Life Ins. Co. v. Jones (In Re Jones)*, 20 B.R. 988 (Bkrtcy.E.D.Pa.1982). In *Jones* we largely predicated our decision on the rationale of *Durrett v. Washington National Ins. Co.*, 621 F.2d 201 (5th Cir.1980), in which the United States Court of Appeals for the Fifth Circuit held that the precursor of § 548(a) under the former bankruptcy act, —§ 67d, former 11 U.S.C. § 107(d), of the Bankruptcy Act of 1898 ("the Act"),—allowed the court to set aside a foreclosure

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

**2.** For the purposes of this action the parties have apparently agreed that the debtor was previously named "Yorketown Associates." For the purposes of this opinion we will refer to both entities simply as "the debtor."

**3.** In relevant part § 101 states as follows:

§ 101. Definitions

In this title—

(41) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

which occurred within one year before the filing of the petition if it produced less than a reasonably equivalent value for the property when the debtor was insolvent. The defendant has requested that we reconsider our decision in *Jones* in light of a recent decision from the Ninth Circuit, *Madrid v. Lawyers Title Ins. Corp.*, 725 F.2d 1197 (9th Cir.1984) which reached a conclusion at odds with *Durrett*. Since there does not appear to be any governing appellate authority in this circuit on the question at hand, we will reconsider our decision in *Jones*. Due to the defendant's reliance on case law decided under the former fraudu-lent conveyance provision, (§ 67 of the Act), we will begin our analysis with a historical review of that section.

When Congress adopted the Act in 1898, § 67 [4] only provided for the avoidance of two types of fraudulent transfers,—those made in actual fraud on creditors and those which would be avoidable under state insolvency law. For use throughout the Act a "transfer" was defined at § 1(30),[5] former 11 U.S.C. § 1(30). Numerous substantive changes to the Act were wrought in 1938 by the Chandler Act, which effected a complete redrafting of § 67.[6] With this

**4.** On its adoption in 1898, § 67 stated, in part, as follows:

> e That all conveyances, transfers, assignments, or incumbrances his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this Act subsequent to the passage of this Act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the State, Territory, or District in which such property is situate, shall be deemed null and void under this Act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt.

**5.** To the extent pertinent to our discussion, § 1 stated as follows:

> § 1. Meaning of words and phrases
> \*     \*     \*     \*     \*     \*
> The words and phrases used in this title and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows:
> \*     \*     \*     \*     \*     \*

> (30) "Transfer" shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor;
> \*     \*     \*     \*     \*     \*

**6.** With the passage of the Chandler Act, § 67 read as follows:

> § 67. Liens and Fraudulent Transfers.—
> \*     \*     \*     \*     \*     \*
> d.(1) \* \* \*
> (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition in bankruptcy or of an original petition under chapter X, XI, XII, or XIII of this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent, as distinguished from intent presumed

amendment constructive fraud was added as a third basis for avoiding fraudulent transfers under § 67d(2). The Chandler Act also added to § 67 a provision defining when a transfer is deemed made. § 67d(5). These changes, manifested by the Chandler Act, were incorporated in the Code at § 548[7] forty years later without substantial change.

The defendant cites numerous cases, in support of its position that the foreclosure of a security interest within the avoidance period is not a transfer. *E.g., Thompson v. Fairbanks*, 196 U.S. 516, 25 S.Ct. 306, 49

L.Ed. 577 (1905); *Finance and Guaranty Co. v. Oppenhimer*, 276 U.S. 10, 48 S.Ct. 209, 72 L.Ed. 443 (1928); *Colston v. Austin Run Mining Co.*, 194 F. 929 (3d Cir.1912). Virtually all the cases cited by the defendant involve preferences, most of which were decided *prior* to the passage of the Chandler Act in 1938.

Since we have notable authority holding that there is no preference when a creditor forecloses his security interest within the vulnerability period, it is necessary to discuss why the case law on preferences arising under 11 U.S.C. § 547[8] and its precur-

---

in law, to hinder, delay, or defraud either existing or future creditors.

(3) * * *

(4) Every transfer of partnership property and every partnership obligation incurred within one year prior to the filing of a petition in bankruptcy or of an original petition under Chapter XI or XII of this Act by or against the partnership, when the partnership is insolvent or will be thereby rendered insolvent, is fraudulent as to partnership creditors existing at the time of such transfer or obligation, without regard to actual intent if made or incurred (a) to a partner, whether with or without a promise by him to pay partnership debts, or (b) to a person not a partner without fair consideration to the partnership as distinguished from consideration to the individual partners.

(5) For the purposes of this subdivision d, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, but, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter XI or XII of this Act, it shall be deemed to have been made immediately before the filing of such petition.

＊　＊　＊　＊　＊　＊

7. In pertinent part § 548 states as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

＊　＊　＊　＊　＊　＊

(d)(1) For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition.

(2) In this section—

(A) "value" means property, or satisfactions or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor; and

(B) * * *

＊　＊　＊　＊　＊　＊

8. To the extent relevant to this case § 547 states as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

sor under the Act, § 60, should not apply to fraudulent conveyances. Firstly, the nomenclature used in §§ 548 and 547 differs. Although the term "transfer" is defined at 11 U.S.C. § 101(41) in the broadest terms, its operative effect in §§ 547 and 548 is significantly reduced due to the restrictive effect of the other elements in those two sections. Although other elements are required for proof of a § 547 preference, a transfer may be set aside under that section only if the effect of the transfer will be to enable the creditor to obtain a greater percentage of his debt through the ostensible preference than he would receive in a chapter 7 bankruptcy. § 547(b)(5). Thus, although it is often inartfully stated by counsel and appears occasionally in the cases that no transfers occur when a secured creditor forecloses his security interest during vulnerability period, a more accurate summary would reveal that while a transfer occurred, no *preferential* transfer was effected. Since the case law cited by the defendant actually holds that no *preferential* transfer occurred, rather than no transfer, the defendant's case law is inapposite to defining the scope of the term "transfer" as it is applied to § 548.

Secondly, the value of both *Thompson and Oppenhimer* and their progeny diminishes further when considered in light of the fact that they were decided prior to the enactment in 1938 of the constructive fraud avoidance power found at § 67d(2)(a), which, in reiteration, in the precursor to § 548(a)(2).

Thirdly, the case law on preferences is not compelling authority on the question at bench on fraudulent conveyances since the essence of a preference action notably differs from that of a fraudulent conveyance suit. The substance of a preference action is that one creditor is paid only what he is owed but he is paid in derogation of other creditors who have not been paid. As it is commonly perceived, a preference action is a vehicle used to recoup a payment justly made by the debtor to one of his creditors in complete or partial satisfaction of a debt. A preference action generally denotes a fair exchange of consideration, e.g., the debtor surrenders $100.00 in satisfaction of a $100.00 debt. If the debt were fully secured, a satisfaction of it during the avoidance period would not be a preference since, in distributing the debtor's assets through bankruptcy,—such a secured claimant would receive either the collateral or its value,—the creditor would not receive more through the alleged preference than he would in bankruptcy. The same logic applies to the involuntary surrender of an item of property to satisfy a debt, such as through foreclosure. While a preference action typically denotes a fair exchange of consideration, a fraudulent conveyance based on imputed or implied fraud denotes a lack of fair consideration. Modifying our example used above, if the debtor voluntarily or involuntarily transferred within a year before the filing of the petition property worth $400.00 in satisfaction of a secured obligation of $100.00, the transfer would be avoidable under § 548(a)(2)(A) and (B)(i), assuming that the debtor was insolvent when the transfer was made. In such a case the debtor's prepetition assets, which ultimately would constitute the bankruptcy estate, would have been depleted by $300.00. It is this depletion of assets that § 548(a)(2) serves to rectify. As illustrated by the language of § 548(a)(2)(A), § 548(a)(2) is directed toward an inquiry of whether the debtor "received less" than fair consideration. Relief under § 548(a)(2) is *not* predicated on

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

whether the *creditor* obtained the value of his bargain. Consequently, in the above example, the $300.00 equity in the property would have been fraudulently conveyed within the meaning of this section.

As noted above there is a split of authority in the United States Courts of Appeals with *Durrett* (in the Fifth Circuit) holding that a foreclosure may be an avoidable transfer under § 548(a) while *Madrid* (in the Ninth Circuit) holds that it is not. We believe that *Durrett* is the more convincing view in recognizing that a transfer occurs at the time of foreclosure as well as on the perfection of the security interest. The aspect of the conveyance which makes it assailable under § 548(a)(2)(A) is the transfer from the debtor of the value of the property in excess of the reasonably equivalent value of the secured indebtedness, which in most cases may simply be called the equity. *Madrid* ignores the second transfer without any clearly plausible basis for doing so. The dissent in *Madrid* recognized this flaw in the majority's analysis but concurred on the basis that under § 548(a) a transfer is avoidable under § 548(a) only "if the debtor" received less than the fair value of the transferred items. The concurrence posited that the debtor's lack of participation defeated recovery under § 548(a) and on this point he is supported by the dissent in *Abramson v. Lakewood Bank and Trust Co.*, 647 F.2d 547, at 549–60 (5th Cir.1981) (Clark dissenting).[9] We find this position flawed since § 548 was enacted to correct the improper depleting of the debtor's assets, which assets would otherwise ultimately constitute the bankruptcy estate. This diminution may occur whether the debtor participates or not. Consequently, we attribute the putative element of the participation of the debtor to nothing more than a reasonable but erroneous construction of slightly inartful statutory language.

Among the bankruptcy courts that have discussed the issue, the majority have stated that a foreclosure is a transfer which may be avoided under § 548(a) if the sale generated inadequate consideration. *Home Life Ins. Co. v. Jones (In Re Jones)*, 20 B.R. 988 (Bkrtcy.E.D.Pa.1982); *Gillman v. Preston Family Investment Co. (In Re Richardson)*, 23 B.R. 434 (Bkrtcy.D.Utah 1982); *Perdido Bay Country Club Estates, Inc. v. Equitable Trust Co. (In Re Perdido Bay Country Club Estates, Inc.)*, 23 B.R. 36 (Bkrtcy.S.D.Fla.1982); *Rosner v. Worcester (In Re Worcester)*, 28 B.R. 910 (Bkrtcy.C.D.Cal.1983); *Calaiaro v. Pittsburgh National Bank (In Re Ewing)*, 33 B.R. 288 (Bkrtcy.W.D.Pa.1983) (involuntary sale of securities pledged as collateral may be avoided under § 548(a)); *Berge v. Sweet (In Re Berge)*, 33 B.R. 642 (Bkrtcy.W.D.Wis.1983); (§ 548(a) may be used to avoid a strict foreclosure on an installment sale contract for the purchase of realty); *Marshall v. Spindale Savings and Loan Assoc. (In Re Marshall)*, 15 B.R. 738 (Bkrtcy.W.D.N.C.1981); *Cooper v. Smith (In Re Smith)*, 24 B.R. 19 (Bkrtcy.W.D.N.C.1982); *Federal National Mortgage Assoc. v. Wheeler (In Re Wheeler)*, 34 B.R. 818 (Bkrtcy.N.D.Ala.1983); *contra, Alsop v. Alaska (In Re Alsop)*, 14 B.R. 982 (Bkrtcy.D.Alaska 1981), *aff'd* at 22 B.R. 1017 (D.Alaska 1982).

Our review of the case law on this issue indicates that the authorities holding that a foreclosure is not a transfer and thus not avoidable under § 548(a) do so predominately on the basis that allowing the avoidance of such transfers is disruptive of the alienability of property, casts clouds on mortgages and deeds of trust, depresses prices at sheriffs' sales and generally creates more harm than good. While these points are well taken, they are insufficient justification for judicial evisceration of § 548. The proper remedy lies with Congress.

As stated above, the property at issue had a fair market value between $2,000,-000.00 and $2,400,000.00. At the sheriff's sale the defendant, which was the mortgagee, bid only $297,000.00 on the property because its encumbrance on the property exceeded $3,000,000.00. The debtor argues

---

**9.** The majority in *Abramson* reaffirmed the principle expressed in *Durrett*.

that the satisfaction of the encumbrance should not be added to the amount bid in determining the value of the consideration exchanged for the property. In an action under § 548(d)(2)(A) value is defined to include the satisfaction of an antecedent debt, and consequently, we conclude that the consideration was adequate in the § 548 action.

We indicated above that the debtor's complaint also seeks to set aside the sheriff's sale under the Pennsylvania Uniform Fraudulent Conveyance Act. It asserts under this statute, as it did under § 548, that the sheriff's sale should be avoided on the basis of inadequate consideration. As with the § 548 cause of action, the debtor contends that the value of the defendant's encumbrance should not augment the amount of the bid in considering whether the consideration paid by the defendant at the sheriff's sale was adequate. We find the debtor's authority [10] inapposite and hold, as we did above with the § 548 action, that the value bid at a sheriff's sale includes the indebtedness that will be satisfied through the foreclosure proceeding.

In recapitulation, we have determined that the debtor cannot avoid the sheriff's sale of the property under § 548 nor can it avoid the sale under Pennsylvania's Fraudulent Conveyance Act. Consequently, we need not discuss the other aspects of this fraudulent conveyance suit in which the debtor charged that its transfer of the building to YPL in 1981 was fraudulent. We will enter an order dismissing the debtor's complaint.

---

**10.** *Peoples Pittsburgh Trust Co. v. Blickle,* 330 Pa. 398, 199 A. 213 (1938); *Beaver County Building and Loan Assoc. v. Winowich,* 323 Pa. 483, 513– 15, 187 A. 481 (1936) (Kephart concurring); *Home Owners Loan Corp. v. Eiden,* 329 Pa. 532, 198 A. 114 (1938).